IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

JABAR ARKEZ FAIR, )
as Administrator of the Estate of )
YVONNE B. FAIR, and as )
Beneficiary of Life Insurance Policy )
No. PL0411244, )
)
    Plaintiff, )
)
v. ) Civil Action No.
) 3:26-cv-00010-ECM-KFP
)
PROTECTIVE LIFE INSURANCE COMPANY, )
)
    Defendant. )

## COMPLAINT AND JURY DEMAND

Plaintiff, JABAR ARKEZ FAIR ("Plaintiff"), as Administrator of the Estate of Yvonne B. Fair and as Beneficiary of Life Insurance Policy No. PL0411244 (the "Policy"), proceeding pro se, for his Complaint against Defendant PROTECTIVE LIFE INSURANCE COMPANY ("Protective" or "Defendant"), alleges as follows:

I.   NATURE OF THE ACTION

1. This is a civil action arising from Defendant's issuance, servicing, amendment/reissue, lapse administration, and post-death denial of benefits under a life-insurance policy insuring Yvonne B. Fair ("Ms. Fair" or the "Insured").

2. Plaintiff brings this action in two capacities: (a) as Administrator of the Estate of Yvonne B. Fair, and (b) as the designated Beneficiary of the Policy.

3. After accepting premiums for approximately thirty-three (33) years, Defendant declared the Policy lapsed in 2021 without legally sufficient notice and then denied the 2022 death claim, while retaining decades of premium payments.

4. Separately and independently, Plaintiff alleges that Defendant withheld delivery of the original 1988 policy booklet, and later embedded photocopied amendment/reissue pages dated 1989 into the bound Policy booklet before delivering it—thereby depriving the Insured of a meaningful opportunity to review, rescind, reject, or replace an economically inferior product.

5. Plaintiff seeks the Policy's death benefit, consequential and compensatory damages, equitable relief including policy reconstruction and an accounting, and punitive damages sufficient to punish and deter the alleged conduct, including nine-figure punitive damages.

## II. JURISDICTION AND VENUE

6. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because Plaintiff is a citizen of Alabama, Defendant is a citizen of a different state(s) for diversity purposes, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events and omissions giving rise to the claims occurred in Lee County, Alabama, within the Eastern Division of the Middle District of Alabama, including the marketing/sale of the Policy, servicing communications, premium drafting, notice practices, and claim-handling impacts.

## III. PARTIES

8. Plaintiff JABAR ARKEZ FAIR is a natural person residing in Lee County, Alabama. Plaintiff is the Administrator of the Estate of Yvonne B. Fair and the designated Beneficiary of the Policy.

9. Ms. Fair was an African-American woman who resided in a rural, predominantly Black, low-income area of Alabama at the time the Policy was sold and throughout much of the Policy's term.

10. Defendant PROTECTIVE LIFE INSURANCE COMPANY is an insurance company authorized to transact insurance business in Alabama and, upon information and belief, maintained and/or directed policy administration, premium billing/drafting, notice generation, lapse processing, and claims operations affecting Alabama policyholders including Ms. Fair.

## IV. FACTUAL ALLEGATIONS

### A. Policy Issuance and Basic Terms

11. On or about March 3, 1988, Defendant issued Life Insurance Policy No. PL0411244 insuring Ms. Fair, with a stated face amount of $100,000.

12. The Policy booklet contains a policy schedule and premium table reflecting initial annual premium amounts and scheduled increases at later attained ages, along with nonforfeiture values tables and other policy provisions.

13. Premiums were paid for decades, including by pre-authorized payment methods, and Defendant accepted and retained such premiums over the Policy's term.

B.  1989 Amendment/Reissue Embedded Within the Bound 1988 Policy Booklet

14. The physical Policy booklet in Plaintiff's possession is bound and glued as a single booklet. The policy pages are consecutively numbered (e.g., Page 3, Page 4, Page 5, etc.).

15. Between numbered pages "Page 4" and "Page 5," the booklet contains a "REQUEST FOR AMENDMENT OF POLICY CONTRACT" reflecting that Defendant was "authorized and requested to amend" the contract and "REISSUE AS PIONEER GL-15 + 5," dated September 13, 1989, with an internal approval date of September 25, 1989.

16. Those amendment/reissue pages appear to be photocopied sheets that are materially different in paper weight and appearance from the surrounding original policy pages, yet they are physically bound into the booklet as if original pages—creating the impression of a single uninterrupted policy as issued.

17. Plaintiff alleges that the only plausible way for 1989 amendment pages to be bound into an originally issued 1988 policy booklet is that Defendant retained control of the policy booklet and integrated the amendment pages before delivery to the Insured, rather than delivering the 1988 booklet promptly at issuance.

18. Plaintiff further alleges Defendant did not clearly disclose—at the time of amendment/reissue—the material economic consequences of converting the Policy to a "Pioneer GL-15 + 5" plan, including changes to long-term premium obligations, nonforfeiture values, and the risk that coverage would become economically unsustainable in later years.

19. Plaintiff will rely on photographs and authenticated reproductions of the Policy booklet pages to demonstrate the physical binding, the placement of the 1989 amendment pages between numbered pages, and the photocopy characteristics, while retaining the original booklet in secure custody for inspection pursuant to appropriate Court order or protective order.

C.  Deprivation of Review/Rescission Opportunity and Predatory Context

20. Plaintiff alleges that timely delivery of the original Policy booklet is essential because it is the primary instrument by which an insured can review terms, verify coverage, understand nonforfeiture values, and exercise any free-look or rescission rights available under the contract and/or governing law.

21. Plaintiff alleges Defendant's withholding and later delivery of a manipulated booklet deprived Ms. Fair of a meaningful opportunity, at or near issuance, to evaluate the

product, seek advice, cancel, or replace it—thereby locking her into a long-term premium trajectory that, upon information and belief, was designed to become prohibitively expensive at later ages.

22. Plaintiff alleges the sale and subsequent handling of the Policy occurred in a rural, predominantly Black community where policyholders reasonably relied on agent representations and where such reliance can be exploited through nondelivery, inadequate disclosure, and replacement practices.

D. Premium Draft Interruption, Lapse Processing, and Failure of Notice (2021)

23. In or around June 2021, the bank account used for premium drafting was involuntarily closed due to suspected fraud or account action unrelated to any intent by Ms. Fair to discontinue coverage.

24. Plaintiff alleges Defendant failed to generate and/or deliver legally and contractually required notices, including late-payment notices, grace-period notices, notices of impending lapse, notices of lapse, and disclosures of nonforfeiture elections or alternative payment methods.

25. Plaintiff maintains USPS Informed Delivery records and alleges that no such notices were scanned, delivered, or otherwise received during the relevant period.

26. Despite decades of premium payments and the existence of statutory nonforfeiture protections, Defendant processed a lapse/termination and thereafter treated the Policy as having no death-benefit obligation.

E. Death, Claim Submission, Denial, and Pre-Suit Demands

27. Ms. Fair passed away in 2022. Plaintiff submitted a claim for payment of the $100,000 death benefit.

28. Defendant denied the claim, asserting the Policy lapsed prior to death, while retaining premiums paid over approximately thirty-three (33) years.

29. Between 2022 and 2025, Plaintiff sent multiple written demands and appeals to Defendant requesting payment and/or ethical resolution, supported by documentation and narrative explanations. Defendant failed to provide a timely, substantive, good-faith response.

30. Only after later obtaining and examining the physical Policy booklet did Plaintiff discover the embedded 1989 amendment pages and the apparent nondelivery/withholding scheme alleged herein.

F. Exhibits

31. Plaintiff may rely upon and, where appropriate, submit the following exhibits in support of the allegations set forth herein:

    Exhibit A – Letter from Plaintiff Jabar Arkez Fair to Protective Life Insurance Company, dated October 8, 2022, notifying Defendant of the insured's death, explaining the circumstances surrounding the premium interruption caused by the unexpected closure of the Regions Bank account, requesting consideration for reinstatement or payment of benefits, and providing supporting personal and financial context following the insured's death.

    Exhibit B – Follow-up letter from Plaintiff Jabar Arkez Fair to Protective Life Insurance Company, dated October 31, 2022, addressed to the Claims Department, responding to Defendant's correspondence, reiterating the absence of lapse or non-payment notices, restating the insured's long payment history dating back to March 3, 1988, and again requesting equitable reconsideration of the claim.

    Exhibit C – Formal written appeal from Plaintiff Jabar Arkez Fair to Protective Life Insurance Company, dated June 10, 2025, appealing the denial of the life-insurance claim under Policy No. PL0411244, detailing the lack of notice, the insured's continuous premium payments for over thirty years, Plaintiff's role as full-time caregiver, and requesting that Defendant reverse its denial and honor the claim.

    Exhibit D – Final written demand letter from Plaintiff Jabar Arkez Fair to Protective Life Insurance Company, dated October 20, 2025, demanding full payment of the $100,000 death benefit under Policy No. PL0411244, together with United States Postal Service certified mail receipts, tracking confirmations, and signed return (green) cards evidencing Defendant's receipt of the demand and Defendant's failure to respond within the stated deadline.

32. Plaintiff reserves the right to supplement, amend, or substitute exhibits in accordance with the Federal Rules of Civil Procedure and applicable orders of this Court.

V. CLAIMS FOR RELIEF

COUNT I – BREACH OF CONTRACT

33. Plaintiff realleges and incorporates by reference Paragraphs 1 through 30 as if fully set forth herein.

34. The Policy constitutes a valid and enforceable contract. Ms. Fair substantially performed by paying premiums for decades, and any alleged nonpayment was excused by Defendant's notice failures and/or subject to nonforfeiture protections.

35. Defendant breached the Policy by wrongfully declaring lapse and by refusing to pay the death benefit owed upon Ms. Fair's death.

36. As a direct and proximate result, Plaintiff has suffered damages including the unpaid $100,000 death benefit and consequential losses.

## COUNT II – BAD FAITH FAILURE TO PAY

37. Plaintiff realleges Paragraphs 1 through 34.

38. Defendant had no reasonably legitimate or arguable basis to deny the claim and/or to refuse payment once presented with the facts and documentation.

39. Defendant intentionally failed to determine whether there was any lawful basis for denial and failed to conduct a prompt, fair, and good-faith investigation, thereby acting with reckless or intentional disregard for Plaintiff's rights.

## COUNT III – FRAUD (MISREPRESENTATION) AND FRAUDULENT CONCEALMENT (RULE 9(b))

40. Plaintiff realleges Paragraphs 1 through 37.

41. Defendant, through its agents and servicing channels, misrepresented and/or concealed material facts regarding (a) timely delivery of the Policy booklet, (b) the nature and economic consequences of the 1989 reissue to "Pioneer GL-15 + 5," and (c) the Policy's nonforfeiture protections and lapse procedures.

42. Particulars: Plaintiff alleges the "REQUEST FOR AMENDMENT OF POLICY CONTRACT" dated September 13, 1989 and approved September 25, 1989 was physically embedded between numbered pages of the 1988 Policy booklet and presented as part of the original bound contract, without conspicuous replacement disclosures and without providing the Insured a meaningful opportunity to review or rescind prior to being bound.

43. Plaintiff and the Insured reasonably relied on Defendant's concealment and omissions by continuing to pay premiums, believing they held a legitimate $100,000 life-insurance contract with lawful servicing and notice practices.

44. Defendant's fraud and concealment proximately caused damages, including premium loss, forfeiture of coverage, denial of death benefits, and related harms.

## COUNT IV – FRAUDULENT SUPPRESSION / CONCEALMENT (Ala. Code § 6-5-102, et seq.)

45. Plaintiff realleges Paragraphs 1 through 42.

46. Defendant had a duty to disclose material facts, including timely delivery of the Policy, the true nature and consequences of the 1989 reissue, the premium trajectory at later ages, and the availability of nonforfeiture elections upon default.

47. Defendant suppressed those facts with intent to induce continued premium payments and to foreclose timely policy cancellation or replacement, causing Plaintiff and the Insured injury.

COUNT V – NEGLIGENCE / WRONGFUL LAPSE

48. Plaintiff realleges Paragraphs 1 through 45.

49. Defendant owed a duty to administer premium billing/drafting and lapse processing with reasonable care and in compliance with statutory and contractual notice requirements.

50. Defendant breached that duty by failing to generate and/or deliver required notices and by processing a lapse notwithstanding applicable statutory nonforfeiture protections.

51. Defendant's negligence proximately caused the wrongful loss of coverage and denial of the death benefit.

COUNT VI – UNJUST ENRICHMENT / RESTITUTION

52. Plaintiff realleges Paragraphs 1 through 49.

53. Defendant has been unjustly enriched by retaining decades of premium payments while refusing to pay the promised benefit, in circumstances that make such retention inequitable.

54. Plaintiff is entitled to restitution and/or disgorgement to prevent unjust enrichment.

COUNT VII – MISREPRESENTATION RELATING TO POLICY REPLACEMENT / REISSUE

55. Plaintiff realleges Paragraphs 1 through 52.

56. Defendant misrepresented and/or failed to disclose the true character of the 1989 "Pioneer GL-15 + 5" reissue, including its graded/limited benefit structure (if applicable), premium escalation, and diminished nonforfeiture value relative to reasonable expectations for a long-term life policy.

57. Such misrepresentations and omissions were material and induced continued performance to Plaintiff's detriment.

COUNT VIII – UNFAIR AND DECEPTIVE TRADE PRACTICES (Ala. Code § 8-19-1, et seq., as applicable)

58. Plaintiff realleges Paragraphs 1 through 55.

59. Defendant engaged in unfair, deceptive, and unconscionable practices in the sale, amendment/reissue, servicing, notice administration, and claim handling of the Policy, including practices designed to harvest long-term premiums while engineering forfeiture at advanced ages.

60. Plaintiff is entitled to all relief available under applicable consumer-protection principles and related remedies.

## COUNT IX – FAILURE TO APPLY NONFORFEITURE BENEFITS (Ala. Code § 27-15-72)

61. Plaintiff realleges Paragraphs 1 through 58.

62. Upon default in premium payment, Alabama law requires minimum nonforfeiture benefits (paid-up or extended-term insurance, or cash surrender value, as applicable) for qualifying policies. Defendant failed to apply or offer such benefits and failed to provide proper election disclosures.

63. Defendant's failure constitutes a statutory violation and contributed to the wrongful lapse and claim denial.

## COUNT X – NEGLIGENT SUPERVISION, TRAINING, AND RETENTION

64. Plaintiff realleges Paragraphs 1 through 61.

65. Defendant failed to properly supervise, train, and monitor its agents and servicing personnel responsible for policy delivery, replacement disclosures, premium drafting, lapse processing, and claim handling.

66. Such failures proximately caused or contributed to the misconduct alleged herein.

## COUNT XI – DECLARATORY AND EQUITABLE RELIEF (POLICY RECONSTRUCTION / ACCOUNTING)

67. Plaintiff realleges Paragraphs 1 through 64.

68. A justiciable controversy exists concerning the Policy's true terms, delivery history, replacement/amendment history, premium application history, notice generation/delivery logs, and the proper application of nonforfeiture benefits.

69. Plaintiff seeks declaratory relief, an accounting, and equitable orders requiring Defendant to produce complete policy administration records, document-retention logs, and policy reconstruction materials sufficient to determine the Policy's status and Defendant's compliance.

## VI.   DAMAGES

70. Plaintiff demands judgment for (a) contractual damages including payment of the $100,000 death benefit; (b) consequential and compensatory damages; (c) restitution and disgorgement; (d) pre- and post-judgment interest; (e) costs; and (f) punitive damages in an amount not less than ONE HUNDRED MILLION DOLLARS ($100,000,000.00), or such greater amount as the evidence and the jury may award, to punish and deter Defendant's willful, fraudulent, and bad-faith conduct.

71. Plaintiff further seeks all other relief—legal and equitable—that the Court deems just and proper under the circumstances.

## VII.  JURY DEMAND

Plaintiff demands trial by jury on all issues so triable.

## VIII.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in his favor and against Defendants, jointly and severally, and award:

A. Compensatory damages in an amount to be determined at trial, but not less than ONE HUNDRED MILLION DOLLARS ($100,000,000.00) in total;

B. Any statutory or enhanced damages available under applicable law, if Plaintiff elects to assert such claims;

C. Punitive or exemplary damages, if and where allowed by law, in an amount sufficient to punish Defendants and deter similar conduct in the future;

D. Pre- and post-judgment interest as allowed by law;

E. Costs of suit and, if Plaintiff later retains counsel and if allowed by law, reasonable attorneys' fees;

F. Such other and further relief as the Court deems just and proper.

Respectfully submitted,

DATED: January 6, 2026.

_____
JABAR ARKEZ FAIR
Pro Se Plaintiff
251-767-7771
ArkezFair@gmail.com